**John A. CAMARDO, Sr., Plaintiff,**

v.

**GENERAL MOTORS HOURLY–RATE EMPLOYEES PENSION PLAN, Defendant.**

No. 87–CV–1335A.

United States District Court, W.D. New York.

June 19, 1992.

---

## ORDER

ARCARA, District Judge.

This matter was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B), for report and recommendation on defendant's summary judgment and dismissal motions.[1] Magistrate Judge Heckman filed a Report and Recommendation on June 22, 1992 denying defendant's motions for dismissal and summary judgment. Instead, she recommended awarding plaintiff summary judgment. Defendant objects to the Report and Recommendation. For the reasons stated herein, the Court adopts the findings of the Magistrate Judge, denies defendant's summary judgment and dismissal motions, and further awards summary judgment to plaintiff.

### Failure to Follow the Local Rules

Objections to a Magistrate Judge's Report and Recommendation are governed by Rule 30(a)(3) of the Local Rules for the United States District Court for the Western District of New York ("Local Rules"). Specifically, Local Rule 30(a)(3) provides that the "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."

■ It is clear from the plain meaning of the rule that objections to a Report and Recommendation are to be specific and are

---

1. Defendant's motions were pursuant to Rules 12 and 19 and/or 56 of the Federal Rules of Civil Procedure.

to address only those portions of the proposed findings to which the party objects. It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a "second bite at the apple" when they file objections to a Report and Recommendation, as the "goal of the federal statute providing for the assignment of cases to magistrates is to 'increas[e] the overall efficiency of the federal judiciary.'" *McCarthy v. Manson*, 554 F.Supp. 1275, 1286 (D.Conn.1982), *aff'd*, 714 F.2d 234 (2d Cir.1983) (*quoting Nettles v. Wainwright*, 677 F.2d 404, 410 (Former 5th Cir.1982) (en banc)) (footnote omitted). "The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work." *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980). There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge.

■ Defendant in the instant action attempted to take a "second bite" when it filed *objections to* the Report and Recommendation. Instead of citing objections to specific portions of the proposed findings and recommendations, defendant merely submitted a revised version of the same arguments it presented to the Magistrate Judge. Entire portions of the brief were transposed into the objections [2]. The Fifth Circuit said:

> [i]t is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider. This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.

**2.** It is noted that defendant's original brief in support of the summary judgment and dismissal motions was 44 pages. The brief in support of

*Nettles*, 677 F.2d at 410. In the accompanying footnote, the court said "[p]arties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Id.* at 410 n. 8. Defendant clearly did not "pinpoint" specific portions of the report and recommendation to which it objected, but instead, attempted to rehash its entire argument and have this Court conduct a duplicative review where nearly every issue presented to the Magistrate Judge was raised for a second time on objection.

■ Failure to abide by the Local Rules constitutes reason enough to dismiss defendant's objections as courts have broad discretion in interpreting and applying their Local Rules. *Green v. Dorrell*, 969 F.2d 915 (10th Cir.1992); *Smith v. Oelenschlager*, 845 F.2d 1182 (3d Cir.1988); *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir.1983). Accordingly, the Court dismisses defendant's objections for failure to comply with Local Rule 30(a)(3).

### De Novo Review

The above notwithstanding, the Court has, pursuant to 28 U.S.C. § 636(b)(1)(B), made a *de novo* determination of the Magistrate Judge's Report and Recommendation. The Court has also reviewed the submissions of the parties and has heard argument from counsel. Upon *de novo* review, the Court adopts the proposed findings for the reasons stated in Magistrate Judge Heckman's Report and Recommendation.

### CONCLUSION

IT IS HEREBY ORDERED that the objections are dismissed due to defendant's failure to comply with the Local Rules; and

IT IS FURTHER ORDERED that the Report and Recommendation of the Magistrate Judge is adopted in its entirety on the merits.

IT IS SO ORDERED.

the objections to the Report and Recommendation is 59 pages.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara pursuant to 28 U.S.C. § 636(b)(1)(B) to hear and report on all dispositive motions. Presently before the court are Defendant's motions to dismiss pursuant to Fed.R.Civ.P. 12 and 19 and/or for summary judgment pursuant to Fed.R.Civ.P. 56. The following constitutes the undersigned's proposed findings and recommendations for the disposition of said motions.

### FACTS

Plaintiff John A. Camardo ("Plaintiff"), born April 18, 1935, was employed by General Motors Corporation ("GMC") at its Tonawanda plant from October, 1961, through July 11, 1983, when he suffered a back injury on the job. Plaintiff alleges that he tried to go back to work on July 15, 1983, but claims his leg "buckled and gave way" on his way into the plant (Plaintiff's Memorandum of Law, Item 18, p. 2). Plaintiff returned home, and has not worked since. He has received medical treatment from several physicians for both physical and mental injuries.

Plaintiff received disability benefits under GMC's disability plan from July 12, 1983 through December 1, 1983. In response to GMC's request, Plaintiff underwent a company physical on December 6, 1983, and was told by the company doctor that he could return to work the next day, with a 25 lb. weight restriction. At that time he was also handed a written "Return to Work Notice" containing the same directions and information. He claims that severe back and leg pains prevented him from returning to work on December 7, 1983 and, in fact, caused him to be placed into traction for approximately two weeks. Item 18, p. 2.

In August, 1984, Plaintiff received an award of Social Security disability benefits based on the Social Security Administration ("SSA")'s determination that he was totally disabled from gainful employment as of July 11, 1983. Plaintiff has also been receiving New York State Workers' Compensation benefits from July 12, 1983 to present.

In his complaint, filed October 15, 1987 (Item 1), Plaintiff seeks a judgment directing Defendant General Motors Hourly–Rate Employees Pension Plan ("Defendant" or the "Plan") to provide him disability pension benefits, pursuant to the requirements of § 502 of ERISA, 29 U.S.C. § 1132. The Plan provides for a disability pension for GMC employees who become totally and permanently disabled prior to attaining age 65 with at least 10 years of credited service (a copy of the Plan is attached as Exh. A to Plaintiff's Affidavit, Item 17). Plaintiff alleges that upon his receipt of the favorable decision from the SSA, he contacted GMC regarding application for disability pension benefits and was advised by an unidentified GMC personnel department employee that he was not entitled to such benefits because his employment with GMC had terminated his employment as of December 12, 1983. *See* Item 17, Par. 15.

Plaintiff's attorney wrote the Plan Administrator on October 11, 1984, to request application forms on Plaintiff's behalf (Item 17, Exh. H), and received a response dated October 18, 1984 from Mrs. Ida Law, GMC's Employee Benefits Supervisor, which denied his request for pension application forms, explaining that Plaintiff was ineligible since his employment record showed that he was released as a "voluntary quit" as of December 12, 1983 and therefore was not an "employe" [sic] within the meaning of the Plan. Item 17, Exh. I. Plaintiff's attorney wrote back on February 12, 1985, requesting an appeal from the ineligibility determination and advising the supervisor that it was "difficult to determine how [Plaintiff] could 'voluntarily quit' at a time when he was totally and permanently disabled." Item 17, Exh. J. Plaintiff claims that there was no response to this appeal, and none appears in the record. By letter dated December 8, 1986, Plaintiff renewed his request for application forms and information about the ap-

peal process. Item 17, Exh. K. Again, Plaintiff claims there was no response.

## ARGUMENTS

GMC, as Defendant, moves for summary judgment dismissing the complaint on the grounds that: (1) Plaintiff was not a GMC employee within the meaning of the Plan since he refused to comply with the "Return to Work Notice" delivered to him on December 6, 1983, which required him to report to work within 3 days, and Plaintiff therefore became a "voluntary quit" having "broke seniority" under § 111(b) of the Collective Bargaining Agreement between GMC and the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") (the "National Agreement") (*see* Exhibits of Defendant GMC, Item 11(a), Exh. 1, pp. 83–84); (2) Plaintiff failed to exhaust his three-fold administrative remedies as provided in the National Agreement (*id.*, pp. 26–43 (Grievance Procedures)), including his GMC contractual remedies, intra-Union remedies, or intra-Plan remedies; (3) Plaintiff has failed to join GMC, UAW, the GMC–UAW Joint Board of Plan Administration, and Metropolitan Life (the Plan's underwriter) as indispensable parties pursuant to Fed. R.Civ.P. 19(b), and has improperly sued the Plan which is not a suable legal entity; and, (4) GMC's determinations that Plaintiff was not an eligible "employee" and that he could return to work are *res judicata* and beyond the applicable statutes of limitations (30 days under the Plan, or 6 months under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185), commencing December 12, 1983 (the date it was determined that Plaintiff was a "voluntary quit"). *See* Defendant's Brief in Support, Item 12.

In opposition (Plaintiff's Memorandum of Law, Item 18), Plaintiff argues that the instant action was clearly brought "to recover benefits due to him under the terms of the [P]lan, to enforce his rights under the terms of the [P]lan, or to clarify his rights to future benefits under the terms of the [P]lan" as provided in § 502 of ERISA. According to Plaintiff, he attempted to apply for disability pension ben-

efits based on the fact that he was permanently and totally disabled prior to December 12, 1983—the date Defendant contends he was a "voluntary quit"—but was denied this attempt. Thus, according to Plaintiff, he was disabled *while he was still employed* by GMC, and was wrongfully denied the opportunity to recover benefits due him under the Plan in violation of ERISA, a claim wholly distinct from any claim that GMC breached the National Agreement when it made the "voluntary quit" determination (Item 18, pp. 7–11).

Plaintiff also contends that the Plan is a proper party under the express provisions of ERISA, which provides that "[a]n employee benefit plan may sue or be sued under [§ 502] as an entity." Thus, according to Plaintiff, his claim for relief against the Plan for enforcement of his right to collect benefits is correctly sued (*id.*, pp. 11–12), and within the six-year statute of limitations applicable to ERISA (*id.*, pp. 13–14). Plaintiff further contends that § 224 of the GMC–UAW National Agreement specifically provides that "[n]o matter respecting the provisions of the Pension Plan ... shall be subject to the grievance procedure established in this Agreement, ..." (Item 11(a), Exh. 1, p. 146), and therefore no remedy is provided by the National Agreement under which he could sue for the relief he seeks (Item 18, 12–13).

Finally, Plaintiff contends that the Plan itself does not contain an administrative appeals procedure for denial of an application for benefits and failure to issue an eligibility determination, and thus exhaustion of administrative remedies would have been futile in this case (*id.*, p. 15). *See, e.g., Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir.1990).

Oral argument was held on June 16, 1992, at which counsel for the parties were heard. Based on the matters addressed at argument and on the record before me, for the reasons discussed below, I recommend that the court deny each of Defendant GMC's motions, and further recommend that the court direct the Plan Administrator to provide Plaintiff with appropriate

application forms or to otherwise allow Plaintiff to properly apply for disability pension benefits under the Plan's provisions for Total and Permanent Disability Retirement.

## DISCUSSION

Section 502 of ERISA provides, in relevant part:

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

\* \* \* \* \* \*

**(c) Administrator's refusal to supply requested information**

Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

**(d) Status of employee benefit plan as entity**

(1) An employee benefit plan may sue or be sued under this subchapter as an entity.

29 U.S.C. § 1132.

Based upon this statutory language, after reviewing the pleadings, memoranda, affidavits and exhibits on file and after hearing argument on the issues raised by the motions presently before the court, it is clear that Plaintiff has timely and properly stated a claim for relief under ERISA. Defendant attempts to characterize the central dispute in this case as one arising out of a breach of the National Agreement stemming from the determination that Plaintiff became an automatic "voluntary quit" three days after failing to honor the "Return to Work Notice," as required by § 111(b) of the National Agreement, and consequently Plaintiff was not an "employee" within the meaning of the disability pension provisions of the Plan. According to Defendant, Plaintiff's remedy, if any, lies with the grievance procedures set forth in the National Agreement, and any suit in this court for enforcement of such a remedy must be treated as one for breach of collective bargaining agreement/breach of duty of fair representation under § 301 of LMRA, 29 U.S.C. § 185.

 However, Plaintiff contends—correctly—that since he was still an employee at the time the disabling injury occurred, and since the Plan is unclear as to the time at which the "employee" determination shall be made, he should have been given the opportunity to apply for disability pension benefits so that his claim could be determined through the proper channels. I agree. Indeed, if Defendant's argument were to be accepted, Plaintiff had three days from receipt of his "Return to Work Notice" to either file his application for disability pension benefits or provide satisfactory medical reasons for not returning to work and, failing to do so, was simply terminated automatically without any affirmative obligation on the part of GMC to notify Plaintiff as to the effect such termination would have on his pension eligibility, or any other consequences. Such a position is untenable, and is inconsistent with the terms of the Plan itself, which provides in relevant part that:

Management will notify each employe [sic] who has been absent for 5 continuous months, because of disability, of his possible eligibility for total and perma-

nent disability pension. The Union member of the Local Pension Committee will be given a copy of the employe notification letter, or advised if personal contact is made with such employe. If such absence continues for a period of 9 full months because of disability and the employe has not applied for total and permanent disability pension, Management will again notify the employe of his possible eligibility for such pension and will give a copy of the employe notification to the Union member of the Local Pension Committee.

Agreement Implementing Section 3(c) of the Supplemental Agreement, Pension Plan, Dated March 21, 1982, Between General Motors Corporation and the UAW, § B(4)(c), p. 112, attached as Exhibit A to Item 17. The Plan also contains specific provisions for proving that an applicant is disabled. *See id.,* § B(4), subsections (a), (b), (d).

There is nothing in the record before me to indicate that Defendant complied with any of its obligations under these Plan provisions. Defendant's conduct appears to be a transparent effort to avoid its responsibility under the Plan to give Plaintiff an opportunity to demonstrate that he meets the Plan's definition of "total and permanent disability." This is confirmed by Defendant's subsequent and repeated refusal to provide an application to Plaintiff.

■ Furthermore, Plaintiff has sued for enforcement of his rights under ERISA and therefore is not subject to the restrictive "exhaustion of remedies" or statute of limitations requirements for filing a breach of collective bargaining agreement/breach of duty of fair representation action under § 301 of LMRA.

Accordingly, I find that Plaintiff's complaint clearly states a claim upon which relief can be granted under §§ 502(a)(1)(A), 502(a)(1)(B), or 502(a)(3) of ERISA. I further find that Plaintiff has properly sued the employee benefit plan as an entity under ERISA § 502(d)(1), and that GMC, UAW, the GMC–UAW Joint Board of Administration of the Pension Plan, and Metropolitan Life Insurance Company are not indispensable parties to this lawsuit. I also find that the complaint was filed within the six-year limitations period of N.Y.C.P.L.R. § 213 applicable to ERISA § 502 actions. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund,* 698 F.2d 593 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). I therefore recommend that the court deny in full Defendant's motion for summary judgment to dismiss the complaint for failure to state a claim, failure to join indispensable parties, lack of subject matter jurisdiction, and any other grounds for dismissal claimed to have been raised by this motion and not specifically addressed herein.

■ Additionally, while not presented by Plaintiff for consideration on cross-motion, I find that the circumstances of this case warrant the further recommendation that the court grant summary judgment to Plaintiff on his claim for relief under ERISA insofar as he seeks an order directing the Plan Administrator, pursuant to 29 U.S.C. § 1132(c), to provide Plaintiff with application forms or any other information required under the Plan so as to enable Plaintiff to have his claim for disability pension benefits determined on its merits. *See, e.g., Coach Leatherware Co., Inc. v. Anntaylor, Inc.,* 933 F.2d 162, 167 (2d Cir. 1991) (district court may independently raise and grant summary judgment motion in favor of nonmoving party where facts before the court were fully developed so that moving party suffered no prejudice) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). This is the relief which Plaintiff seeks in ¶ 21 of his Affidavit (Item 17), and this is the relief which Plaintiff's counsel agreed was appropriate at the time of argument. Plaintiff has not yet been given the opportunity to meet the requirements of "total and permanent disability retirement" under the provisions set forth in the Plan, and the questionable procedure by which it was determined that Plaintiff was ineligible for benefits cannot stand as a substitute for those requirements and provisions. Upon proper application and determination, if Plaintiff is found not to be disabled, he can at that time pursue what-

ever appeal remedies he may have under the terms of the Plan or under ERISA.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of this Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Fed. R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

So ordered.