Rakwena MOLEFE, Plaintiff,

v.

**KLM ROYAL DUTCH AIRLINES and
Northwest Airlines, Defendants.**

No. 05 Civ. 4676 (LTS)(DFE).

United States District Court,
S.D. New York.

March 6, 2009.

Rakwena Molefe, New York, NY, pro se.

Stephen J. Fearon, New York, NY, for Defendants.

**MEMORANDUM ORDER AND OPINION ADOPTING REPORT AND RECOMMENDATION**

LAURA TAYLOR SWAIN, District Judge.

The above-captioned action arises out of the alleged mistreatment of *pro se* Plaintiff Rakwena Molefe ("Plaintiff") and his baggage by Defendants KLM Royal Dutch Airlines, a Netherlands corporation, and Northwest Airlines, a Minnesota corporation (collectively "Defendants"), during an

international flight from Johannesburg to New York City via Amsterdam. The Court has subject matter jurisdiction over the controversy because it arises under a treaty of the United States, the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45 (2000), 1999 WL 33292734 (2000) ("Montreal Convention"). 28 U.S.C.A. § 1331.

On August 6, 2008, Magistrate Judge Douglas F. Eaton issued a Report and Recommendation ("Report") recommending that Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) be granted (docket entry no. 32).[1] Plaintiff timely filed objections to the Report (docket entry no. 33). Defendants timely filed a submission that responded to Plaintiff's objections and did not raise any additional objections (docket entry no. 34). Plaintiff subsequently filed a reply to Defendants' response (docket entry no. 35).

When reviewing the Report, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636(b)(1)(C) (West 2008). The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings. *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error. *See Pearson–Fraser v. Bell Atl.*, No. 01 Civ. 2343, 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y.1992). Similarly, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002). Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal. *Camardo*, 806 F.Supp. at 381–82.

Magistrate Judge Eaton thoroughly analyzed the parties' submissions, the Montreal Convention, and the case law interpreting the Montreal Convention and its predecessor treaty (Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) ("Warsaw Convention")). The Report provides an extensive recitation of the procedural history, the facts alleged, and the arguments asserted by the parties, and familiarity with the Report is assumed. The Court has considered thoroughly the record herein, including the parties' submissions, the Report, and Plaintiff's objections, and has reviewed *de novo* all of Plaintiff's specific objections.

The Report reaches its recommendation to grant Defendant's motion for judgment on the pleadings based upon four conclusions, each one of which is fatal to one of Plaintiff's four claims or sets of related

---

1. Although Defendants characterized their motion as one to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) because Defendants had submitted an answer to Plaintiff's complaint (docket entry no. 9) prior to the time they initiated the instant motion (docket entry no. 23). For the purposes of this Memorandum Opinion and Order, the difference is immaterial, as the Court would apply the same standard of review on either motion. *Shaw v. Rolex Watch U.S.A., Inc.*, 745 F.Supp. 982, 984 (S.D.N.Y.1990).

claims. The four conclusions are as follows: the $200 penalty assessed by Defendants for rescheduling Plaintiff's flight is not actionable because Plaintiff has not alleged that the imposition of the fine breaches the term of any contract between the parties (Report at p. 494); Plaintiff's discrimination claims under federal or state law are precluded as a matter of law, regardless of whether the facts alleged in support of them would be sufficient to survive a motion for judgment on the pleadings, because the Montreal Convention provides the exclusive cause of action for damages arising out of the carriage of passengers and their baggage in international air travel (Report at pp. 494–45); Plaintiff's claim based upon the nine-day delay Plaintiff endured before receiving his baggage is not actionable because the delay suffered was shorter than the 21–day delay necessary to give rise to a claim under Article 17(3) of the Montreal Convention; and Plaintiff's baggage damage claim is precluded by his failure to notify Defendants of the claim within the time period set by Article 31 of the Montreal Convention.[2]

Plaintiff concedes the correctness of the Report's first conclusion and abandons the claim based upon the $200 penalty, but he objects to the Report's conclusions with respect to his discrimination, baggage delay, and baggage damage claims. The Court liberally construes Plaintiff's arguments as specific objections to the Report. The Court, based on a *de novo* review, adopts the Report's conclusions, which are dispositive of all of Plaintiff's claims.

 Plaintiff argues that Magistrate Judge Eaton erred by failing to conclude that Defendants' alleged willful conduct constituted an "act or omission … done with intent to cause damage," Montreal Convention, art. 22(5), and is therefore actionable under the Montreal Convention. Article 22(5) reads in its entirety as follows

The foregoing provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that such servant or agent was acting within the scope of its employment.

*Id.* This provision of the treaty merely precludes carriers from benefitting from the monetary ceilings on liability imposed by paragraphs 1 and 2 of Article 22 if they intentionally or recklessly cause damage. However, this provision does not independently create a cause of action for damages for any alleged injury borne out of willful or reckless conduct. Rather, as Magistrate Judge Eaton rightly noted, the Montreal Convention only permits a damages remedy in the event of death, bodily injury, damage to baggage or cargo, or delay; any other injury allegedly suffered as a result of a carrier's willful conduct is not actionable. Montreal Convention, arts. 17–22; *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* No. 02 Civ. 6746, 2003 WL 21032034, at *2–5 (S.D.N.Y. May 5, 2003).

Plaintiff asserts that, because the boarding pass for the first leg of his trip did not have his name on it, he did not have a valid

---

**2.** Plaintiff claims that he complied with the requirements of Article 31 by sending a facsimile to Defendants. At best that facsimile complied with Article 31 for the purposes of Plaintiff's delay claim, the dismissal of which is supported by independent grounds. The facsimile was allegedly sent before Plaintiff received his baggage, and therefore it could not have provided notice of his damage claim.

contract with Defendants, and therefore he cannot be bound by the Montreal Convention. He also asserts that Defendants' failure to properly furnish him with baggage tags violates the Defendants' obligations under the Montreal Convention and thereby releases Plaintiff from its terms. These arguments are foreclosed by Article 3 of the Montreal Convention. Article 3(5) provides

> Non-compliance with the provisions of the foregoing paragraphs shall not affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability.

Montreal Convention, art. 3(5). Whereas Article 3(1) of the Convention imposes upon carriers the responsibility to provide passengers with certain documentation, including baggage identification tags, the effect of Article 3(5) is to ensure that passengers and carriers remain bound by the Montreal Convention *despite* a carrier's technical failure to provide a passenger with proper documentation.[3] Accordingly, Plaintiff's objection that he should not be bound by the Montreal Convention due to the alleged irregularities involved in Defendants' provision of his boarding pass and baggage tags is contradicted by the text of the Montreal Convention itself.

█ Plaintiff also asserts in his objections to the Report that he should be not bound by the Montreal Convention's terms because he "was not familiar with the [Montreal] Convention until after initiating research [after the expiration of the Article 31 time limits]." Pl.'s Aff. in Objection to Report, ¶ 7. The Court construes this argument as an equitable request to allow Plaintiff to pursue his claim despite his failure to abide by the requirements of Article 31, which provides time limits within which a passenger must notify a carrier in writing to preserve a complaint for delayed or damaged baggage. Montreal Convention, art. 31. Plaintiff raises this argument for the first time in his objections to the Report. Plaintiff has not proffered that he did not receive from Defendants the standard list of terms of conditions when he purchased his ticket, which, as required by Article 3 of the Montreal Convention, convey the Article 31 requirements. The pleadings and submissions therefore do not indicate that Defendants failed to provide Plaintiff with the requisite notice of the terms to which he would be bound and, furthermore, the Montreal Convention does not provide for equitable variance of its terms. The Court therefore rejects Plaintiff's assertion that he should be relieved from Article 31's requirements.

The Court has considered all of Plaintiff's other objections and concludes that none of them warrants rejection of the Report's recommendation that judgment on the pleadings be granted in Defendants' favor.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Eaton's Report and Recommendation and grants Defendants' Motion for Judgment on the Pleadings in its entirety. Plaintiff's complaint is dismissed with prejudice. This order resolves docket entry nos. 23 and 27. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

---

**3.** Furthermore, Article 3 does not contain any requirement that the passenger's name be included on his travel document; it only requires that the document state the place of origin and the flight destination. Montreal Convention, art. 3(1).

## REPORT AND RECOMMENDATION TO JUDGE SWAIN

DOUGLAS F. EATON, United States Magistrate Judge.

Mr. Rakwena Molefe, proceeding *pro se*, alleges delay and damage to his baggage during international air travel on defendants' airplanes from Johannesburg, South Africa to New York City, with a layover in Amsterdam. The two defendants—KLM Royal Dutch Airlines ("KLM") and Northwest Airlines are code-share partners. (See 1/29/08 Jenkins–Wiener Decl. ¶ 1.)

For the reasons set forth below, I recommend that Judge Swain grant defendants' motion to dismiss the Amended Complaint in its entirety (Docket Item # 23) and deny plaintiff's motion for judgment on the pleadings (Docket Item # 27).

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are gleaned from plaintiff's Amended Complaint. Plaintiff had flown from New York City to Johannesburg. He was scheduled to return to JFK airport in New York City on February 5, 2005, but did not do so. Instead, during the last week of March 2005, he drove to the Jan Smuts Airport in South Africa to reschedule his flight. He alleges that a KLM reservation consultant advised him that KLM's computer failed to "pull out" his ticket and that he needed to ask his New York travel agent, Pan Express Travel Agency ("Pan Express"), to reactivate his reservation. Subsequently, plaintiff called Pan Express and confirmed a reservation for April 2, 2005. (Am. Compl. pp. 1–2.)

At approximately 8:45 p.m. on April 2, 2005, a KLM reservation consultant at the Jan Smuts Airport told plaintiff that KLM's computer did not have a reservation under his name. She told him to purchase a new one-way ticket to New York City. Plaintiff called Pan Express, and the travel agent advised him to go back to the KLM consultant and show the used ticket stub from his flight from New York to South Africa. With that stub, the KLM consultant was able to confirm the unused February 5 ticket. She told plaintiff that he would have to pay a $200 penalty for a new ticket to travel on April 2. Plaintiff left the reservation counter, returned with the $200, and paid it to a male consultant, who processed plaintiff's electronic ticket and typed the luggage tags for plaintiff's two bags. After printing the tags, the consultant tore them up and asked his colleague to print two new tags. The consultant then issued plaintiff a boarding pass, handed him his passport, and told him to hurry to the gate because the plane had begun boarding. (Am. Compl. p. 3.)

Plaintiff boarded the plane with no luggage tags. The hostess led him to seat 24J (the number printed on the boarding pass) but it was already occupied. Plaintiff and the hostess took a closer look at the pass. They saw that the pass had been issued to "Molemans Veerle" for 24J, but that the KLM consultant had made a handwritten notation of "66H." The hostess told plaintiff that his assigned seat was 66H. (Am. Compl. p. 3.)

In Amsterdam, plaintiff was issued a boarding pass under his correct name. He was told that his luggage had been recorded on the computer system, and that it would be on his plane to New York. The plane arrived at JFK airport on April 3, 2005; plaintiff was on it, but his luggage was not. At JFK airport, plaintiff spoke to the KLM/Northwest Airlines luggage consultant, who "expressed surprise" that KLM had not given luggage tags to plaintiff. Plaintiff was asked to fax a list of all of the items in his luggage; he alleges that

he did so during the week of April 2. However, he has failed to produce any copy or confirmation of his alleged fax; to the contrary, KLM has submitted the affidavit of Annelies Dol, which says:

7. ... I have reviewed KLM's records ... and have not located any written notice of plaintiff's claim regarding the alleged damage or delay to his checked baggage.

8. KLM also does not have a record of having received any timely oral complaint made by plaintiff.

(3/25/08 Dol Decl. ¶¶ 7–8.) On April 11 (nine days after he entrusted his luggage at the Jan Smuts Airport), it was returned to him. He alleges that at least one of the bags was torn, and that his clothes protruded from the bag. (Am. Compl. pp. 3–4, 6; 3/17/08 Molefe Aff. ¶ 3(b).)

On May 13, 2005, plaintiff paid a $250 filing fee and filed his complaint with our Court. On May 26, 2005, he served an Amended Complaint alleging that the defendants' actions were discriminatory and constituted willful misconduct. Specifically, he claims that this was the second time that KLM discriminated against him because of his active membership in the Pan Africanist Congress and because of his participation in the national liberation struggle against apartheid in South Africa. He says that the first discriminatory incident occurred in the 1990s on a KLM flight to South Africa, when a KLM hostess holding a coffee mug in the aisle "tumbled the mug and spilled coffee on my body and clothing." (Am. Compl. pp. 5–7.)

On July 8, 2005, defendants served their Answer. On May 31, 2005, Judge Swain referred this case to me for general pretrial supervision and to write a Report and Recommendation on any dispositive motions. On October 21, 2005, defendant Northwest Airlines filed a Notice of Bankruptcy which automatically stayed the ac-

tion against it. After Northwest Airlines emerged from bankruptcy, I held a status conference on February 11, 2008.

On February 29, 2008, defendants moved to dismiss plaintiff's Amended Complaint in its entirety, or in the alternative to dismiss it to the extent that it sought damages in excess of the limitation of liability set forth in Article 22 of the Montreal Convention (1,000 SDRs, approximately $1,600 in U.S. dollars). The defendants served the following documents: (1) a Notice of Motion (Docket Item # 23); (2) a "Memorandum of Points and Authorities" (Docket Item # 24); and (3) a 2/29/08 Declaration of Chris Jenkins–Wiener (Docket Item # 25).

On March 17, 2008, plaintiff served three documents: (a) his affirmation in opposition (Docket Item # 28); (b) a cross-motion for judgment on the pleadings (Docket Item # 27); and (c) a motion for leave to file a Second Amended Complaint. (Docket Item # 26.)

On March 26, 2008, defendants served a reply memorandum (Docket Item # 29) and a 3/25/08 Declaration of Annelies Dol (Docket Item # 30).

By Order dated May 1, 2008, I denied leave to file a Second Amended Complaint because its "only apparent purpose [was] to 'stipulate' that the Montreal Convention superseded the Warsaw Convention in 1999," and it was "clear from the defendants' dismissal motion that they agree that the Montreal Convention applies to the facts in this case." (Docket Item # 31.)

## DISCUSSION

In ruling on a dismissal motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Par-*

*dus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), *citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations omitted). The "longstanding maxim" that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' " has now been explicitly rejected by the Supreme Court. *Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir.2008), *citing Bell Atlantic Corp.,* 550 U.S. 544, 127 S.Ct. at 1968–69. Instead, the Supreme Court is "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Boykin,* 521 F.3d at 213, *citing Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in the original).

Under the new guidelines set forth by the Supreme Court and the Second Circuit, when deciding a Rule 12(b)(6) motion to dismiss, the court must evaluate the complaint under the standard set forth in Rule 8(a)(2). *Erickson,* 551 U.S. 89, 127 S.Ct. at 2200. Rule 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " *Id., quoting Bell Atlantic Corp.,* 550 U.S. 544, 127 S.Ct. at 1965 (internal citations omitted). "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin,* 521 F.3d at 213–14, *quoting Erickson,* 551 U.S. 89, 127 S.Ct. at 2200.

At pages 1–3 of his notice of motion for judgment on the pleadings (Docket # 27), plaintiff alleges that he is entitled to monetary damages under the Montreal Convention and under federal and New York state law, for the following reasons:

A. The defendants were willfully ignorant in timely retrieving the records relating to his February 5, 2005 unused ticket and that such conduct caused him to pay a fee.

B. The defendants issued his boarding pass with the wrong name and seat number printed on it. He claims that such conduct was intentional and/or was willfully negligent and/or was discriminatory.

C. The defendants failed to issue his luggage tags, which delayed the receipt of his luggage. He alleges that the defendants maliciously intended to "to unduly seize and search" his luggage and that they damaged it. He claims that such conduct was also discriminatory.

To further support his discrimination allegations, plaintiff notes that KLM is a Dutch airline and he alleges that the Dutch Government has engaged in actions, since 1652, that have sparked "continual African wars of resistance opposing the Dutch occupation" and apartheid. (Docket # 27 at p. 3.)

The Montreal Convention "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. American Airlines, Inc.,* 360 F.3d 366, 371 (2d Cir.2004); Montreal Convention, Art. 1, 1999 WL 33292734. It "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." *Ehrlich,* 360 F.3d at 372. The parties are in agreement that this case is governed by the Montreal Convention.

The following sections of the Montreal Convention are relevant to Mr. Molefe's lawsuit (with my emphases in bold font):

Article 3 says, in part:

\* \* \*

3. The carrier shall deliver to the passenger a baggage identification tag for each piece of checked baggage.

4. The passenger shall be given written notice to the effect that where this Convention is applicable it governs and may limit the liability of carriers in respect of death or injury and for destruction or loss of, or damage to, baggage, and for delay.

5. **Non-compliance** with the provisions of the foregoing paragraphs **shall not affect** the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability.

Article 17(1) says:

1. The carrier is liable for damage sustained in case of death or **bodily injury** of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 17(2) creates the possibility of liability for loss of baggage or **damage** to baggage, but subject to various conditions, including Articles 19, 22, 29 and 31; Article 17(2) says:

2. The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the baggage....

Article 17(3) creates the possibility of liability for **delay** in delivering baggage, but only if the delay exceeded 21 days, and only subject to various other conditions, including Articles 19, 22, 29 and 31; Article 17(3) says:

3. If the carrier admits the loss of the checked baggage, or if **the checked baggage has not arrived at the expiration of twenty-one days after the date on which it ought to have arrived,** the passenger is entitled to enforce against the carrier the rights which flow from the contract of carriage....

Article 19 says:

The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Article 22 says:

1. In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to 4 150 Special Drawing Rights.

2. In the carriage of baggage, the liability of the carrier in the case of destruction, loss, damage or delay is limited to 1 000 Special Drawing Rights for each passenger unless the passenger has made, at the time when the checked baggage was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires....

Article 29 says:

In the carriage of passengers, **baggage** and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can **only** be brought **subject to the conditions** and such **limits** of liability as are set out in this Convention . . . .

Article 31 imposes further conditions on any claim concerning baggage; it says:

1. Receipt by the person entitled to delivery of checked baggage or cargo without complaint is *prima facie* evidence that the same has been delivered in good condition and in accordance with the document of carriage. . . .

2. In the case of **damage,** the person entitled to delivery **must complain** to the carrier **forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of checked baggage** and fourteen days from the date of receipt in the case of cargo. In the case of **delay, the complaint** must be made **at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.**

3. **Every complaint must be made in writing** and given or dispatched within the times aforesaid.

4. If **no complaint** is made within the times aforesaid, **no action shall lie against the carrier,** save in the case of fraud on its part.

1999 WL 33292734. Case law regarding the Montreal Convention is extremely limited; hence I will rely on cases that involve similar provisions of the Warsaw Convention.

*Plaintiff's claim relating to the $200 penalty*

▉ Plaintiff alleges that KLM charged him a $200 penalty for changing the date of his previously unused ticket. This fails to state a claim for relief. The Amended Complaint (at pp. 1–2) says the original round-trip ticket scheduled a return flight from South Africa to New York for February 5, 2005, and yet he waited until "the week prior [to] 2nd April to reschedule [his] flight." Neither side has submitted a copy of the defendants' terms and conditions for changing a flight, but I note that it is a common practice for the airline industry to charge a fee for ticket changes. Moreover, KLM is not liable for damages on the ground that its "consultant instantly and dismissively insisted [that] the stub could not be used and resisted so for 30 seconds, there[by] displaying willful ignorance."

*Plaintiff's claims of discrimination*

▉ Plaintiff's discrimination claims based on federal and state law must also be dismissed. Article 24 of the Warsaw Convention preempted the application of federal and state law to air transportation cases: "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention . . . ." The same language, with even more emphatic additions, is set forth in the Montreal Convention (also known as the Montreal Protocol) at Article 29 (which I quoted at page 7 of this Report). The United States Supreme Court has said:

... We conclude that the [Montreal] protocol ... clarifies, but does not change, the Convention's exclusivity domain.

\* \* \*

... [T]he Convention's preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty.

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 161, 174–75, 119 S.Ct. 662, 668, 674, 142 L.Ed.2d 576 (1999).

Following *Tseng,* the Second Circuit has held that a "discrimination claim is preempted by the Warsaw Convention if the events giving rise to the claim occurred in the course of the international 'carriage of passengers and baggage,' regardless of whether the original or the amended Article 24 controls." *King v. American Airlines, Inc.,* 284 F.3d 352, 358 (2d Cir.2002).

In the case at bar, the alleged wrongful actions occurred in the course of the international carriage of passengers and baggage, and during the "period within which the checked baggage was in the charge of the carrier." (Article 17(2).) Accordingly, Mr. Molefe's claims fall squarely within the "substantive scope" of Article 17 of the Montreal Convention. *King,* 284 F.3d at 359. As such, he is "not able to maintain an action under Article 17 for **non-bodily** injuries stemming from the discriminatory" conduct. *Ibid.* (with my emphasis).

*Plaintiff's claims related to his luggage*

 Pursuant to Article 3(5) of the Montreal Convention, the defendant's failure to issue luggage tags does not "affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability."

Defendants' 2/29/08 Memorandum, at page 9, stated:

> Plaintiff's [Amended] Complaint states that Defendants delivered his checked baggage to him on April 11, 2005. *See* "B" at ¶ 2. Despite plaintiff's apparent familiarity with the Convention, plaintiff did not submit written notice to Defendants pursuant to Article 31(2) of the Montreal Convention re-

garding the alleged damage to his checked luggage by April 18, 2005 (within seven days from the date of receipt of the checked baggage) nor did plaintiff submit a written [notice] regarding the alleged delay in receipt of his baggage by May 2, 2005 (within twenty-one days after the baggage was placed at his disposal). In fact, Defendants['] first notice of plaintiff's allegations of delay and damage was when plaintiff served a Complaint on May 20, 2005. *See* Declaration of Jenkins–Wiener at ¶ 6. However, serving a complaint 39 days after the baggage was placed at plaintiff's disposal does not comply with Article 31(2)-(3) of the Montreal Convention or Defendants' Tariff. As a result, consistent with Article 31(4) ... "[i]f no complaint is made within the times aforesaid, no action shall lie against the carrier ...". *See Denby [v. Seaboard World Airlines,* 737 F.2d 172, 177 (2d Cir.1984).]

Even if plaintiff had provided *oral* notice within seven days of receipt of his carry-on baggage, such notice would have been ineffective under Article 31(3) of the Montreal Convention and the defendants' tariffs, which clearly require notice in writing. *See Onyeanusi v. Pan Am,* 952 F.2d 788, 795 (3d Cir.1992) (written notification is required "even if an agent of the air carrier has made some affirmative representation that [he or] she is aware of the damage or delay.") Even actual notice by a defendant airline is not a substitute for the requisite written notice of claim. *See Owolabi v. Air France,* 2000 WL 1093057 (S.D.N.Y.2000) ("[E]ven assuming that this verbal notification was given, it is insufficient, as a matter of law, to comply with the requirements of the Warsaw Convention."); *see also Khan v. Singapore Airlines,* 1995 WL 621835 (N.D.Cal. Oct. 16, 1995), *aff'd,* 107 F.3d 16 (9th Cir.1997).

Plaintiff's opposing papers fail to refute those two paragraphs. He submitted a 3/17/08 affirmation which asserts, at ¶ 3(b):

As to defendant's ground to preclude any liability against defendant for baggage delay and damage to baggage for failure to provide timely notice of claim for damage or delay as under Article 31 of the Montreal Convention, plaintiff faxed KLM the week of April 2, 2005 a written descriptive list of clothing and items in baggage as advised by KLM to enable KLM to trace the baggage.

This alleged fax might have been a claim for delay, but it obviously was not a claim for damage (which plaintiff allegedly discovered on April 11). Moreover, plaintiff has not produced any copy or confirmation of such a fax. To the contrary, defendants have submitted two declarations that they have no record of having received any written or oral notice from plaintiff prior to May 20, 2005. KLM's Manager of Legal Issues, Annelies Dol, says:

7. ... I have reviewed KLM's records ... and have not located any written notice of plaintiff's claim regarding the alleged damage or delay to his checked baggage.

8. KLM also does not have a record of having received any timely oral complaint made by plaintiff.

(3/25/08 Dol Decl. ¶¶ 7–8.) And a Northwest Airlines paralegal, Chris Jenkins–Wiener, says:

After a review and search of defendants' Concord database ... I can confirm that defendants did not locate any written notice of plaintiff's claim regarding this alleged damage or delay to his checked baggage. The first written notice defendants received regarding the alleged damage and delay to plaintiff's baggage was the service of plaintiff's Complaint on May 20, 2005, over one month following the return of plaintiff's baggage.

(2/29/08 Jenkins–Wiener Decl. ¶ 6.)

Article 31(3) requires: "Every complaint must be made in writing and given or dispatched within the times aforesaid [in Article 31(2) ]." Plaintiff did not comply with those requirements. Hence his luggage claims must be dismissed pursuant to Article 31(4): "If no complaint is made within the times aforesaid, no action shall lie against the carrier, ..." *See, Lokken v. Federal Express Corp.*, 2000 WL 193121 (S.D.N.Y. Feb. 16, 2000) (Katz, M.J.); *Royal Insurance Co. of America v. DHL Worldwide Express*, 1999 WL 494118 (S.D.N.Y. July 13, 1999) (Patterson, J.), *reconsideration denied by* 1999 WL 672557 (S.D.N.Y. Aug. 26, 1999), *aff'd by* 205 F.3d 1324 (2d Cir.2000); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies Inc.*, 210 F.3d 1099, 1106–07 (9th Cir. 2000). On top of this, the delay claim would have to be dismissed on the substantive ground that plaintiff received his luggage well within twenty-one days after his flight. (See Article 17(3).) Accordingly, plaintiff cannot recover damages on his claims of luggage delay and luggage damage.

## CONCLUSION AND RECOMMENDATION

I recommend that Judge Swain grant defendants' motion to dismiss the Amended Complaint in its entirety (Docket Item # 23) and deny plaintiff's motion for judgment on the pleadings (Docket Item # 27.)

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to my recommendations within 10 business days after being served with this Report (i.e. **no later than August 25, 2008**) by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the

opposing party, (b) to the Hon. Laura Taylor Swain, U.S.D.J. at Room 755, 500 Pearl Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Swain.

Dated: New York, New York

August 6, 2008