**UNITED STATES of America,**

**v.**

**Thomas A. GILLESPIE, Defendant.**

**1:15–CR–00209 EAW**

United States District Court,
W.D. New York.

Signed 04/25/2017

Scott Allen, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Frank Richard Passafiume, Federal Public Defender, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### I. BACKGROUND

Defendant Thomas A. Gillespie ("Defendant") is charged in a one-count Indictment returned on November 12, 2015, with production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). (Dkt. 10). This Court referred the case to Magistrate Judge McCarthy pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for the handling of both dispositive and non-dispositive pretrial motions. (11/13/2015 Text Order).

Pursuant to the schedule set by Magistrate Judge McCarthy, Defendant filed pretrial omnibus motions on June 30, 2016. (Dkt. 22). Defendant requested, *inter alia,* suppression of statements allegedly made on November 25, 2014, during execution of a search warrant at his residence in a second-floor apartment located at 807 State Route 68, East Brady, Pennsylvania, on two grounds: "(a) that it was involuntary under the due process clause of the Fifth Amendment, and (b) that there was a failure to provide *Miranda* warnings as

they were required under the circumstances." (*Id.* at ¶ 5).

The Government filed its response on July 15, 2016 (Dkt. 23), and oral argument was initially held before Magistrate Judge McCarthy on July 27, 2016. (Dkt. 24). Pursuant to the request made at that oral argument, Defendant filed an affidavit on July 27, 2016, in support of his omnibus motions, wherein he adopted the facts set forth "on pages 5 to 8, paragraph 9 through 18" of his previously-referenced omnibus motion. (Dkt. 25). The relevant factual material contained in the referenced paragraphs provided as follows:

9. The factors present during the statement here reveal that the statement was made involuntarily under the due process clause of the Fifth Amendment. The defendant, a soft-spoken man who is small in stature, resided in the second floor apartment of a two-story building. Six (6) law enforcement personnel executed a search warrant at the defendant's residence on November 25, 2014. According to the investigation reports, the second floor apartment "was basically empty except for one small bedroom" and "uninhabited except for the one small bedroom where [the defendant] stays and where [the defendant's] computer was located." Upon entry into the apartment, law enforcement encountered the defendant "coming out of the far end of the hallway room." He was immediately searched and "brought back" to the small bedroom. In the bedroom, the defendant was advised the FBI had a search warrant and was also "made aware" of all six law enforcement personnel in his apartment. Despite all six law enforcement personnel were either inside the small bedroom, or in the uninhabited apartment blocking the path to the exit of the apartment, the defendant was advised that he was not under arrest and free to leave. The defendant was, in fact, not free to leave.

10. The defendant remained in the apartment and was "present for the search" of his computer. During the search, law enforcement allegedly discovered files that "appeared to be consistent with the names indicating child pornography." The defendant was aware of this alleged criminal discovery prior to the conclusion of the search. However, upon conclusion of the search, the defendant was advised that "agents would like to discuss the case with him" and promised him that he would not be arrested. It was only then that the defendant then gave a statement to law enforcement.

14. Based on many of the factors set forth above, the defendant here was in custody. Specifically, immediately upon entry into the apartment by the six law enforcement personnel, the defendant was searched and escorted back to his small bedroom. All six law enforcement were either in the small bedroom with the defendant or in the remainder of the empty apartment directly in the path to the exit. Despite law enforcement stating that the defendant was free to leave, their affirmative actions indicate that he was not, in fact, free to leave and any reasonable person under those circumstances would also not feel free to leave.

16. It is clear that the questions asked of the defendant directly related to the search for contraband thereby likely to elicit an incriminating response. Specifically, the defendant was asked about files that were allegedly accessed on his computer that "appeared to be consistent with the names indicating child pornography."

(Dkt. 22 at ¶¶ 9, 10, 14, 16).

A status conference was conducted before Magistrate Judge McCarthy on Sep-

tember 30, 2016, at which time it was confirmed that the only portion of the pretrial motions that remained in dispute was his motion to suppress statements. (Dkt. 30). Magistrate Judge McCarthy determined that Defendant had not established his entitlement to an evidentiary hearing on the portion of his motion to suppress based upon the failure to provide *Miranda* warnings, but he determined that an evidentiary hearing was required concerning Defendant's argument that his statements were not voluntary because they were induced by an alleged promise by law enforcement that Defendant would not be arrested. (*Id.*).

An evidentiary hearing was held before Magistrate Judge McCarthy on October 26, 2016, at which FBI Special Agent Thomas Carter and Defendant testified (Dkt. 36; Dkt. 40), and the parties submitted post-hearing briefs (Dkt. 42; Dkt. 43; Dkt. 44). On January 10, 2017, Magistrate Judge McCarthy issued a Report and Recommendation ("R & R") setting forth his findings that Defendant had not set forth sufficient facts that he was in custody at the time of the statements so as to justify a hearing on whether *Miranda* warnings should have been administered. (Dkt. 45 at 2–4). With respect to the voluntariness of the alleged statements, Magistrate Judge McCarthy concluded that Agent Carter was "much more credible than defendant" (*id.* at 6), and that the credible evidence did not establish that an alleged promise not to arrest Defendant induced any alleged statements. (*Id.* at 6–7).

On February 24, 2017, Defendant timely filed objections to the R & R, specifically challenging Magistrate Judge McCarthy's (1) determination not to hold an evidentiary hearing with respect to Defendant's challenge to the statements on the grounds that he was not administered *Miranda* warnings, and (2) crediting of Agent Car-

ter's testimony over Defendant's testimony at the hearing, based in part on Defendant's testimony to additional relevant facts that were not included in his affidavit. (Dkt. 49 at 8–12).

The Government responded to the objections on March 10, 2017 (Dkt. 51), and oral argument was held before the undersigned on March 28, 2017, at which time the Court took the matter under advisement and reserved decision. (Dkt. 54).

## II. ANALYSIS

■ A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp.2d 485, 487 (S.D.N.Y. 2009). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Here, Defendant focuses his objections on two central arguments: that the Magistrate Judge erred in not conducting an evidentiary hearing with respect to his *Miranda* claims, and that additional errors were committed in not crediting Defendant's testimony. (Dkt. 49 at 8–12).

■ With respect to Defendant's attacks on the Magistrate Judge's credibility determination, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed is-

sues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F.Supp.2d 496, 499 (W.D.N.Y. 2013) (citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999)))); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised."); *see also United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 65 L.Ed.2d 424, (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings). Here, the Magistrate Judge's determination that Agent Carter was "much more credible than defendant" is fully supported by the record, and there was no error in considering Defendant's failure to mention several salient facts in his affidavit submitted in support of the motion. Indeed, if Defendant had, in fact, been stripped, handcuffed, and told he did not need an attorney, it was perfectly logical to conclude that Defendant would have made a point of mentioning those facts in support of his motion—as opposed to coming up with these allegations at the evidentiary hearing. Accordingly, the Court is not persuaded by Defendant's objections to the extent they are based on a challenge to the credibility determination made by the Magistrate Judge.

 However, the Court is persuaded that Defendant's objections have merit to the extent that they are based on the failure to conduct an evidentiary hearing with respect to his *Miranda* claims. To determine whether a suspect is in custody, entitling the individual to be advised of his or her rights prior to any interrogation, "a court looks at all the surrounding circumstances." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016).

The test for determining custody is an objective inquiry that asks (1) "whether a reasonable person would have thought he was free to leave the police encounter at issue" and (2) whether "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (quoting *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004)). Relevant considerations in making this determination include the length of the interrogation, the location of the interrogation (including whether it occurs at the suspect's home), whether the suspect volunteered for the interview, whether the suspect was restrained, the use of any weapons during the interrogation, and " 'whether officers told the suspect he was free to leave or under suspicion.' " *Id.* (quoting *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011)).

Here, the Magistrate Judge concluded that no evidentiary hearing was required with respect to the issue of whether Defendant was in custody at the time of the interrogation. (Dkt. 45 at 3–4). The Magistrate Judge reasoned that Defendant's motion failed to allege facts sufficient to raise an issue concerning the second part of the test—whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest. (*Id.*). This Court disagrees.

The factual information set forth in Defendant's motion papers was "sufficiently definite, specific, detailed, and nonconjectural" to justify a hearing on the issue of

the failure to provide Defendant with *Miranda* warnings. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (citation omitted); *see United States v. Hamilton*, 538 F.3d 162, 168 (2d Cir. 2008) ("If the asserted facts, or the inferences to be drawn from them, were contested, the court would need to hold a hearing to determine the contested issues."). Here, it was contested whether Defendant was subjected to a custodial interrogation. That the interrogation occurred in Defendant's home, and Defendant was told by law enforcement that he was not under arrest and free to leave, is certainly relevant to the determination of whether a reasonable person in Defendant's position would have understood his freedom to be curtailed to the degree of a formal arrest. *See Faux*, 828 F.3d at 135–36 ("The location of the interrogation in this case—Faux's home—is important. The home is 'the most constitutionally protected place on earth'; thus, the right to terminate the interrogation and be 'free to leave' is 'hollow' if the one place that the individual cannot retreat to, or exclude law enforcement from, is her home. At the same time, courts rarely conclude, absent a formal arrest, that a suspect questioned in her own home is 'in custody.'" (citations omitted)). However, those facts are not dispositive without a consideration of all the relevant factors, and they do not eliminate the necessity of making factual findings based upon an evidentiary hearing as to all the surrounding circumstances so as to determine whether, indeed, Defendant was subjected to a custodial interrogation.

The Court notes that, as a practical matter, the relevant facts may have already been elicited during the evidentiary hearing that was conducted with respect to the voluntariness of Defendant's statements.[1] However, this Court will remand the matter to the Magistrate Judge to make that determination in the first instance, to ascertain what further information, if any, should be elicited at an evidentiary hearing, and to ultimately make factual findings with respect to Defendant's claim that he was subjected to a custodial interrogation without being advised of his rights.

## III. CONCLUSION

For the foregoing reasons, the case is remanded to the Magistrate Judge to conduct further proceedings consistent with this Decision and Order.

SO ORDERED.

---

1. At the hearing conducted with respect to the voluntariness issue, Defendant testified that Agent Lindsey told him that he did not need an attorney. (*See, e.g.,* Dkt. 40 at 45). Agent Lindsey did not testify at the hearing, so Defendant's claims in that regard arguably stand uncontroverted. This Court will leave it to the Magistrate Judge to determine, in the first instance, how, if at all, those alleged facts are relevant to the issue of whether Defendant was subjected to a custodial interrogation.